STATE v. ELMER HARDIE BIGGS. JR., WILLIAM DALTON BIGGS, AND JOHN EDGAR MESSER.

(Filed 13 December, 1944.)

**1. Homicide § 4d—**

When the evidence offered in a criminal prosecution tends to show a homicide committed in the perpetration or attempt to perpetrate a robbery, the offense is murder in the first degree within the specific language of the statute, G. S., 14-17.

**2. Homicide §§ 4d, 25: Criminal Law § 31f—**

Where two witnesses saw two of the defendants enter a store, both witnesses being present, hold up the proprietor with pistols and shoot and kill him and flee, and two other witnesses saw both of these defendants run out of the store and enter and drive away in a car with the third defendant, all four of these witnesses picking out defendants from a number of prisoners in a city jail about 30 days after the homicide and positively identifying them and their car, without denial on the part of the prisoners, and other persons identifying the same defendants as the perpetrators of another hold-up just before their arrest, there is sufficient identification and evidence of murder for the jury, notwithstanding discrepancies and inaccuracies in certain particulars of the evidence, and motion for nonsuit was properly denied.

**3. Homicide § 27c—**

In a prosecution for murder, where all of the evidence for the State tended to show a felonious slaying committed in an attempt to perpetrate a robbery, the defendants offering no testimony, the court correctly charged the jury that, if defendants were guilty at all, they were guilty of murder in the first degree, and that the only verdict the jury could render was guilty of murder in the first degree or not guilty.

**4. Criminal Law § 29b—**

Evidence of a distinct substantive offense is inadmissible to prove another and independent crime, where the two are disconnected and in no way related; but there is a well established exception to this rule, that proof of the commission of like offenses may be competent to show intent, design, guilty knowledge, or identity of person or crime. And this applies

to evidence of like offenses subsequent to the offense charged, if not too remote, and notwithstanding the evidence may tend to impeach the character of defendants.

**5. Criminal Law § 53b—**

Concerning the necessity of the charge of the court complying with G. S., 1-180, nothing more is required than clear instructions which apply the law to the evidence and give the positions taken by the respective parties as to the prominent and controlling features which make for the ascertainment of the facts.

APPEAL by defendants from *Phillips, J.,* at April Term, 1944, of GUILFORD. No error.

The defendants were charged with the murder of E. J. Swanson. The jury returned verdict of guilty of murder in the first degree as to each defendant.

This case was here at Spring Term, 1944, and is reported *ante,* 23. On that appeal error was found in the admission in evidence of certain confessions which were held not voluntary, and a new trial was ordered.

In the trial now under consideration evidence was offered by the State tending to show that the deceased was shot and killed in the perpetration or attempt to perpetrate a robbery, in which all three of the defendants participated. It is not deemed necessary to recite here all the testimony which appears of record, but a brief resume of the material evidence pertinent to the questions presented by the appeal may be stated as follows:

On the night of 19 February, 1943, between 8:30 and 9:00 o'clock, E. J. Swanson, then 67 years of age, was in his store in the village of Jamestown. There was an electric light in the store and one on the porch. Swanson's wife and a customer, O. M. Bundy, were present in the store. Two men, later identified as defendants Wm. Dalton Biggs and John Edgar Messer, came in the front door, and one of them called for a package of cigarettes. Swanson, who was behind the counter near the cash register, waited on them and made change for a dollar bill. They then asked for matches and as Swanson put the matches on the counter Wm. Dalton Biggs drew a pistol, pointed it at Bundy and told him to put his hands up, saying, "This is a hold-up." Swanson made some inarticulate sound and either sank or leaned down behind the counter, and Messer reached over the counter and shot him twice and killed him. The two defendants then ran out of the store. Two other witnesses, Doris and Mildred Ray, who lived near-by, were at this moment coming across the street to the store. They saw a blue Ford coach fifty feet from the store, and Doris Ray recognized and later identified

the defendant Elmer Biggs as the man sitting under the wheel. The moon was shining bright, the weather was warm, the glass of the automobile was down and she had a clear view of this man. Halfway across the street these witnesses heard a noise in the store, hurried to it, and saw the defendants Wm. Dalton Biggs and Messer run out, passing within ten feet of them, and get in the automobile and drive away.

It further appeared in evidence that on 31 March following, these four witnesses went to Danville, Virginia, and identified these three defendants as the men they had testified as having seen in Jamestown the night of the homicide. Defendants were then in custody and the witnesses picked them out from a group. When Mrs. Swanson told Messer and Wm. Dalton Biggs she recognized them as the ones who entered the store and shot her husband they hung their heads and said nothing. When Doris Ray told Elmer Hardie Biggs she identified him as the one she saw under the wheel of the automobile in Jamestown he asked, "Are you sure of that?" and when she said, "I am positive," he said, "Well, there is nothing else I can say."

Evidence was offered and admitted over objection that on 16 March, 1943, twenty-seven days after the homicide at Jamestown, these three defendants were observed driving a blue Ford coach automobile in Danville, Virginia, and that Elmer Hardie Biggs was under the wheel and Messer and Wm. Dalton Biggs were on the seat beside him; that shortly thereafter Messer and Wm. Dalton Biggs entered the filling station of R. F. Barber and asked for smoking tobacco. Barber waited on them, and they drew pistols on him, saying it was a hold-up, and forced him to open the cash drawer and robbed him of $140. They then backed out of the door and told Barber not to follow. They started running in the direction of the place where the other witness had seen the automobile, and Barber picked up his own pistol, ran out the back door and shot at them, and they shot back at him three times. The witnesses identified the defendants as the men they had seen on this occasion in Danville.

There was also evidence that the following morning, 17 March, Wm. Dalton Biggs was arrested in Reidsville in a blue 1938 model Ford coach, identified as the same automobile in which the defendants were seen in Danville, and Messer and Elmer Hardie Biggs were arrested 18 March, near Reidsville, in a closed paneled truck. In the truck beside them was found a photograph of Messer and Elmer Hardie Biggs, each with a pistol in his hand. There was also evidence that defendant Wm. Dalton Biggs while awaiting trial had attempted to escape from jail.

The defendants offered no evidence and did not go on the stand. The jury returned verdict of guilty of murder in the first degree as to all

three of the defendants. The court pronounced sentence of death by asphyxiation as provided by law, and the defendants appealed.

*Attorney-General McMullan and Assistant Attorneys-General Rhodes and Moody for the State.*
*R. R. King, Jr., and P. W. Glidewell for defendants.*

DEVIN, J. The defendants were tried under a bill of indictment charging them with the murder of E. J. Swanson. The evidence offered tended to show that Swanson was feloniously slain, and that the murder was committed in the perpetration or attempt to perpetrate a robbery. This brought the offense within the specific language of G. S., 14-17, and constituted it by force of the statute murder in the first degree. *S. v. Alston,* 215 N. C., 713, 3 S. E. (2d), 11. The question with which the defendants are chiefly concerned is whether there was sufficient evidence to connect them or either of them with the crime charged, and, if so, whether there was error in law in the trial which would entitle them to another hearing.

The defendants noted numerous exceptions in the course of the trial, and in their appeal have assigned error in many rulings of the trial court. However, these are presented in their well prepared brief in. four groups which we will now consider.

1. The defendants excepted to the denial of their motion for judgment of nonsuit on the ground that the evidence of identification of the defendants by the witnesses at the scene of the homicide was insufficient to carry conviction by reason of discrepancies and inaccuracies in certain particulars pointed out, especially in the case of Elmer Hardie Biggs. But an examination of the testimony offered by the State shows that the commission of the offense charged and the identification of the defendants therewith was sufficiently definite and positive to require submission of the case to the jury as to each one of the defendants.

2. Defendants' prayer for instruction to the jury that they might render verdict of guilty of murder in the second degree was properly denied. All the testimony tended to show that the felonious slaying of the deceased was committed in an attempt to perpetrate a robbery. There was no other view presented by the evidence. This brought the crime within the statutory definition of murder in the first degree. Hence, the court correctly charged that if the defendants were guilty at all they were guilty of murder in the first degree, and that the only verdict the jury could render on the evidence was guilty of murder in the first degree or not guilty. The defendants offered no evidence and the defense was necessarily confined to contesting the credibility and weight of the State's evidence and the sufficiency of the identification of the defend-

ants as the perpetrators or active participants in the crime charged. There was no evidence upon which a verdict of guilty of murder in the second degree could properly be founded. The trial judge's ruling was in accord with the decisions of this Court. *S. v. Smith,* 223 N. C., 457; *S. v. Manning,* 221 N. C., 70, 18 S. E. (2d), 821; *S. v. Miller,* 219 N. C., 514, 14 S. E. (2d), 522; *S. v. Satterfield,* 207 N. C., 118, 176 S. E., 466; *S. v. Ferrell,* 205 N. C., 640, 172 S. E., 186; *S. v. Donnell,* 202 N. C., 782, 164 S. E., 352; *S. v. Myers,* 202 N. C., 351, 162 S. E., 568; *S. v. Spivey,* 151 N. C., 676, 65 S. E., 995; *S. v. Covington,* 117 N. C., 834, 23 S. E., 337. In *S. v. Newsome,* 195 N. C., 552, 143 S. E., 187, the same rule was declared, though it was held that under the evidence in that case a verdict of second degree was permissible.

3. The defendants excepted to evidence admitted by the court tending to show that these three defendants on 16 March perpetrated a hold-up and robbery in the same manner and by the same method as that testified as used at Jamestown. They excepted to the court's ruling in this respect and to his reference thereto in his instruction to the jury. This evidence was limited by the court, both at the time of its admission and in the charge, to be considered by the jury only upon the question of intent, guilty knowledge and identification of the defendants. We think this evidence was competent for the purpose to which it was limited. The general rule for the admission of such evidence, deducible from the decided cases, was stated in *S. v. Edwards, ante,* 527, as follows: "Undoubtedly the general rule is that evidence of a distinct substantive offense is inadmissible to prove another and independent crime where the two are disconnected and in no way related, but there is an equally well established exception to this rule that proof of the commission of like offenses may be competent to show intent, design, guilty knowledge, or identity of person or crime." *S. v. Stancill,* 178 N. C., 683, 100 S. E., 241; *S. v. Miller,* 189 N. C., 695, 128 S. E., 1; *S. v. Ferrell,* 205 N. C., 640, 172 S. E., 186; *S. v. Smoak,* 213 N. C., 79, 195 S. E., 72; *S. v. Payne,* 213 N. C., 719, 197 S. E., 573; *S. v. Harris,* 223 N. C., 697; *S. v. Ballard, post,* 855; Wigmore, secs. 300-306; 20 Am. Jur., 292. This rule applies equally to evidence of like offenses committed subsequent to the offense charged, *S. v. Simons,* 178 N. C., 679, 100 S. E., 239; *S. v. Flowers,* 211 N. C., 721, 192 S. E., 110, if not too remote in point of time, *S. v. Beam,* 184 N. C., 730, 115 S. E., 176. Nor is such evidence rendered incompetent on the ground that it tends to impeach the character of the defendants. *S. v. Kelly,* 216 N. C., 627, 6 S. E. (2d), 533.

Since the case at bar hinged largely upon the accuracy of the identification of these defendants as perpetrators of the attempted robbery and murder of E. J. Swanson at Jamestown, we think under the rule it

was competent for the State to show that twenty-seven days later these three defendants driving the same automobile staged a hold-up in almost the exact manner as that in which the deceased was slain; that in the Danville robbery Messer and Wm. Dalton Biggs entered the filling station, held up the proprietor with pistols, robbed his cash drawer while the other defendant, Elmer Hardie Biggs, waited in the automobile and drove them away. This evidence was competent to show the identity of the persons and the crime. *S. v. Edwards, supra.*

4. The defendants noted numerous exceptions to the judge's charge. Most of these exceptions relate to matters hereinbefore referred to. In no other particular is it pointed out that error was committed in the court's instructions to the jury. However, we have examined the entire charge with care and find no just ground for complaint on the part of these defendants. The principles of law applicable to the various phases of the evidence were correctly stated, and the evidence and the contentions of the State and defendants fairly presented. Defendants also raise the point in their brief that in charging the jury the judge did not comply with G. S., 1-180, in that he failed to "state in a plain and correct manner the evidence given in the case and declare and explain the law arising thereon." While this Court has not hesitated to award a new trial where the provisions of this statute have not been substantially complied with, *S. v. Friddle,* 223 N. C., 258, 25 'S. E. (2d), 751; *Smith v. Kappas,* 219 N. C., 850, 15 S. E. (2d), 375; *Ryals v. Contracting Co.,* 219 N. C., 479, 14 S. E. (2d), 431; *Mack v. Marshall Field & Co.,* 218 N. C., 697, 12 S. E. (2d), 235; *S. v. Greer,* 218 N. C., 660, 12 S. E. (2d), 238; *Smith v. Bus Co.,* 216 N. C., 22, 3 S. E. (2d), 362, we do not think this objection is tenable in this case. It was said in *S. v. Graham,* 194 N. C., 459 (467), 140 S. E., 26: "Concerning the necessity of declaring and explaining the law it has been held in quite a number of cases that nothing more is required than a clear instruction which applies the law to the evidence and gives the position taken by the respective parties as to the prominent and controlling features which make for the ascertainment of the facts." Measured by this standard, we do not think the defendants have cause for complaint. See also *S. v. Colson,* 222 N. C., 28, 21 S. E. (2d), 808; *S. v. Puckett,* 211 N. C., 66, 189 S. E., 183; *S. v. Evans,* 211 N. C., 458, 190 S. E., 724; *S. v. Hodgin,* 210 N. C., 371, 186 S. E., 405. The exception on this point might be dismissed as broadside for failure to specify the supposed defects in the charge. *S. v. Webster,* 218 N. C., 692, 12 S. E. (2d), 272. However, we have considered the charge in the light of this criticism, and find the objection untenable.

5. Defendants also noted exceptions to the admission of evidence of the attempt of one of the defendants to escape from jail (20 Am. Jur.,

276), and to other testimony offered by the State. Most of these exceptions are involved in matters already discussed. Other assignments of error in the admission of evidence are not preserved by reference to them in the brief, and are deemed abandoned. Rule 28. But we have examined each of these exceptions and the entire evidence with the degree of care appropriate to the gravity of the case and its serious consequences to the defendants, and are unable to discover any exception which can be sustained or any ruling of the trial judge which should be held for error. As was said by the present *Chief Justice* in *S. v. Wingler,* 184 N. C., 747, "There is no error appearing in the record, except the great error of the defendant in murdering his wife; but this is a mistake which is beyond our province or power to correct."

The defendants have been represented by able counsel who have presented their cause throughout with unflagging zeal; but the jury has accepted the State's evidence as true and found the defendants guilty of a most serious crime. The evidence fully supports the verdict. The trial was in all respects fairly conducted by a competent and experienced judge, and we conclude that the defendants have no just or legal ground to complain of the result.

In the trial we find

No error.